

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG -8 P 1: 38

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **HENRY JAMES** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 04-3180** |
| **JIM ROGERS, WARDEN** | * | **SECTION: "D"(6)** |

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. For the reasons set forth below, it is recommended that the instant petition be **DENIED.**

### I.  PROCEDURAL HISTORY[1]

Petitioner, Henry James, is a state prisoner currently incarcerated in the C. Paul Phelps Correctional Center in DeQuincy, Louisiana. On October 30, 2002, James pled guilty

---

[1]State proceedings wherein petitioner pursued the production of various documents are not included in this procedural history as they are immaterial to the resolution of petitioner's case.



Fee_____
Process_____
X  Dktd_____
___ CtRmDep_____
Doc. No._____

to the amended charge[2] of possession of stolen property over $500.00, in violation of La.R.S. 14:69(A).  On the same date that he rendered his guilty plea, James pled guilty to being a second offender and was sentenced to a term of five years imprisonment, to be served concurrent with any other sentence rendered.[3]  A motion to reconsider sentence was filed with the Louisiana Fourth Circuit Court of Appeals  on or about November  8, 2002, which was subsequently transferred to the district court for consideration on December 12, 2002.[4] On December 17, 2002, the district court denied the motion to reconsider sentence.[5]  On February 25, 2003, petitioner sought to compel the trial court to act upon his motion for reconsideration, filing writ no. 2003-K-0405 with the Louisiana Fourth Circuit Court of Appeals[6]. On April 4, 2003, the Fourth Circuit denied James' writ, finding that the trial court had already ruled.[7]

On or about June 10, 2003, petitioner claims that he mailed an application for

---

[2]James was originally charged with simple burglary.  The bill of information was amended on September 13, 2002, after the state court found no probable cause on the charge of burglary of an inhabited dwelling.  See Docket Entry dated 9/13/02, State Rec. vol. 1.  But see, copy of bill of information in State Rec. vol. 1, where bill of information amendment was dated October 9, 2002.

[3]See Transcript of *Boykinization* dated October 30, 2002, State Rec. vol. 1. See also Docket Entry dated October 30, 2002.

[4]See a copy of Writ No. 2002-K-2240 and ruling in Writ No. 2002-K-2240, in State rec. vol. 1.

[5]See Docket Entry dated December 17, 2002, State Rec. vol. 1.

[6]See State Rec. vol. 2, Application for Writ of Mandamus.

[7]See State Rec. vol. 2 for a copy of writ denial in *State v. James*, (Writ No. 2003-K-0405) (La. App. 4th Cir. 4/04/03).

post-conviction relief (PCR) to the district court for consideration.[8] On June 30, 2003, James

sent a letter to the district court inquiring about the status of his PCR.[9]  On July 14, 2003,

James filed a writ of mandamus with the Louisiana Court of Appeals, Fourth Circuit,

requesting that the appellate court order the district court to rule on his PCR application.[10]

On August 5, 2003, the Fourth Circuit denied the request for mandamus, ruling, "WRIT

DENIED.  Relator entered an unqualified plea of guilty which waives all non-jurisdictional

defects. *State v. Crosby*, 338 So.2d 584 (La. 1976).  Therefore, relator is not entitled to relief

on the claims he asserts in his application for post-conviction relief.  His application for a

writ of mandamus is denied." The trial court subsequently denied the post-conviction

application on or about August 11, 2003.[11]

On September 22, 2003, James filed for supervisory review of the Fourth Circuit's

ruling on his writ of mandamus, with the Louisiana Supreme Court. The Louisiana Supreme

Court denied petitioner's request on October 29, 2004.[12]

---

[8]See Rec. Doc. 1, Petitioner's Memorandum in Support of Habeas Corpus at p. 1. The record contains no evidence that the PCR was filed although subsequent to petitioner's inquiries about its status, the application was denied.

[9]The letter can be found in State Rec. vol. 1.

[10]See copy of writ of mandamus in State Rec. vol. 2.

[11]See copy of letter from Law Clerk, Section K, Orleans Parish Criminal District Court in State Rec. vol. 1.

[12] *State ex rel. James v. State,* 885 So.2d 572, 2003-2651 (La. 10/29/04).  *See also* copy of letter from the Louisiana Supreme Court indicating that petitioner's request for supervisory writs was filed on September 22, 2003, State Rec. vol. 1.

Henry James filed the instant federal habeas petition, his first, on November 16, 2004, the date he signed his federal petition.[13] Therein, James brings the following claims: 1) that his guilty plea was involuntary as he was erroneously informed that he would have five years within which to file an appeal; 2) that his guilty plea was involuntary because (a) he was not informed by his attorney that a criminal trespassing charge had been refused; and, (b) his attorney was ineffective in investigating his case.[14] The State filed a response conceding that petitioner's application is timely and exhausted. The State claims, however, that James' claims are procedurally defaulted.[15]

## II. BACKGROUND FACTS

Petitioner, Henry James, pled guilty to the charge of possession of stolen property over $500.00. Therefore, there is no trial transcript to rely upon for an understanding of the facts of his crime. Based upon the police report filed in James' criminal case, however, the following occurred:

---

[13]This November 16, 2004, filing date was ascertained via the Court's use of the "mailbox rule." Under this rule, a pleading filed by a prisoner acting pro se is considered to be filed on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

[14]*See* Fed. Rec. Doc. 1, Petition under 28 U.S.C. Section 2254 filed by Henry James.

[15]*See* Fed. Rec. Doc. 6, State's response.

On May 20, 2002, law enforcement officers were alerted that a black male subject wearing a blue shirt and blue pants had fled from a recently burglarized residence at 6337 General Haig Street, New Orleans. A similar description was given of a suspect recently seen trespassing at a nearby property at 6225 Marshal Foch Street. In a service alley in the 6100 block of Marshall Foch, Unit 320, Sergeant Alonzo observed a black male wearing a blue shirt and blue pants walking southbound. When the subject saw the officer, the subject fled southbound. Alonzo did not get a good look at the face of the subject.

About 5 to 10 minutes later, Detective Radosti spotted a black male sitting at a bus stop on Germain Street. When the detective stopped at the corner, the subject male, wearing a blue shirt and blue pants, ran in a northerly direction in the 6100 block of Canal Boulevard. The detective activated the emergency button on his police radio and notified the dispatcher of the situation. The subject was then observed by the detective running in a westbound direction, between houses in the block. The detective then drove to Louis XIV Street to begin setting up a perimeter as other units arrived to assist. The perimeter was set up in a couple of minutes as many units were already in the area looking for the subject.

Detective Radosti requested that a canine unit be dispatched to the area. Within a short time of the canine unit's arrival, petitioner was located under a house at 6130 Canal Boulevard. Petitioner was advised that he was under arrest for criminal trespass and advised of his rights. A search of petitioner's person incident to the arrest revealed numerous items of women's jewelry in his left pants pocket. Petitioner then identified himself to the

5

detective to be Michael Rogers. Shortly thereafter, the detective learned that a burglary of a residence at 6155 Canal Boulevard had occurred, which was across the street from where petitioner was found under the house. The victim of the burglary described jewelry that had been taken in the burglary and the description matched the jewelry which was found on petitioner's person. A subsequent investigation confirmed that the jewelry belonged to the victim. Petitioner, as Michael Rogers, was that day booked with criminal trespass for hiding under the property at 6130 Canal Boulevard.[16]

The following day, the detective learned that the arrested subject had falsely identified himself to law enforcement and was, in fact, petitioner Henry James. An additional charge of misrepresentation of name, age and address was lodged against petitioner.[17] James was also booked with simple burglary of an inhabited dwelling and with possession of stolen property.[18] On his initial appearance before the state magistrate, the magistrate determined that there was no probable cause for petitioner to be held on the possession of stolen property charge.[19] A preliminary hearing was then scheduled for June 4th, 2002, at which time the preliminary hearing was "waived but preserved".[20]

---

[16]See State Rec. vol.1, Police Report Item # E-35106-02, dated May 20, 2002.

[17]See State Rec. vol. 1 for a complete copy of the police report.

[18]See State Rec. vol. 1, Police Report Item # E-35319-02, dated May 21, 2002.

[19]State Rec. vol. 1, Docket Entry dated May 21, 2002.

[20]According to the Louisiana Court of Appeal, Fourth Circuit's ruling on Writ No. 2002-K-2306, petitioner's criminal trespass charge was released as of July 18, 2002. See State Rec. vol. 1, *State v. Henry James a/k/a/ Michael Rogers*, (Writ No. 2002-K-2306)(La. App. 4th Cir. 12/03/02).

James was subsequently charged by bill of information, on July 19, 2002, with simple burglary of the residence at 6155 Canal Boulevard. At his arraignment, James requested that he be allowed to represent himself and the court appointed stand-by counsel to assist him.[21] On September 13, 2002, James went on to represent himself on a motion to suppress hearing as well as for a preliminary hearing.[22] As a result, state district judge Arthur Hunter found no probable cause to hold petitioner on the charge of burglary.[23] The bill of information was subsequently amended, on October 9, 2002, to possession of stolen property over $500.00.[24] On that same date, stand-by counsel appeared in court for trial but the defendant failed to appear. The trial was continued until October 30, 2002.[25]

On October 30, 2002, petitioner, with counsel, pled guilty before state district judge Arthur Hunter. At that time, James indicated that he understood he was waiving the following rights by pleading guilty: the right to a trial by judge or jury, the right to be presumed innocent until proven guilty by the State beyond a reasonable doubt, the right to present witnesses and to question the State's witnesses, the right to remain silent at trial or to testify on his own behalf, and, the right to appeal any verdict of guilty. James was

---

[21]See State Rec. vol. 1, Docket Entry dated 7/24/02.

[22]See State Rec. vol. 1, Docket Entry dated 9/13/02.

[23]See State Rec. vol. 1, Docket Entry dated 9/13/02; see also, Court minute entry dated September 13, 2002.

[24]See State Rec. vol. 1 for a copy of the amended bill of information.

[25]See State Rec. vol. 1, Docket Entry dated 10/09/02.

7

informed that the sentencing range for his crime was from zero to ten years.  James also

indicated that he was not forced, coerced or threatened into pleading guilty, that he was

satisfied with the handling of his case by counsel, that he was not promised anything of value

in return for his guilty plea, and that he was not under the influence of drugs, narcotics of

alcohol. The Judge also asked if James understood the consequences of his plea and wished

to plead because he was, in fact, guilty.  James responded in the affirmative.[26] Subsequently,

according to the Transcript of the *Boykin* Examination, the following exchange took place:

> THE COURT:   Do you also understand that there's a five-*year* limit to appeal
> this conviction and a two-year time period to seek post-
> conviction relief; you understand that?  You understand that?
>
> THE DEFENDANT: I ain't hear you. What you said?
>
> THE COURT:   You have five *years* to appeal this conviction and a two-year
> time period to seek post conviction relief: you understand that?
>
> THE DEFENDANT: Yes, sir.[27]

The court went on to show James the Waiver of Rights Form, which the court

claimed had just been read.  The defendant confirmed that it was his signature and initials

on that document and that he had discussed the Waiver of Rights Form with his counsel.  The

---

[26]See State Rec. vol. 1, Transcript of the *Boykin* Examination and Sentence, pp. 4-7.

[27]See State Rec. vol. 1, Transcript of the *Boykin* Examination and Sentence, pp. 6-7 (emphasis added).

court found that petitioner's plea was knowing, intelligent and voluntary.[28] The Waiver of Rights Form which James signed contains virtually identical information as was reviewed during the court's colloquy with one exception: On item #15 of the Waiver of Rights Form, petitioner initialed that he understood that there was a five *day* limit to appeal his conviction and a 2 year time period within which to seek post conviction relief.[29]

In the same proceeding, James pled guilty to being a second offender, after waiving his rights. He was again informed by the court that he had a five year period within which to appeal his sentence, the court found his plea voluntary, and he was sentenced as a multiple offender to a term of five years.[30] James also signed and initialed a Waiver of Rights Form regarding the multiple offender bill, in which he was informed that he had five *days* within which to take and appeal his conviction as a multiple offender.[31]

## III. ANALYSIS

Before this court, James complains that he was never told that he was waiving his appeal or post-conviction rights by entering a guilty plea, that he was told that he had five years to take an appeal, and that the state appellate court wrongly denied him his appellate rights and/or post-conviction relief by somehow refusing to live up to the terms of his "plea

---

[28]See State Rec. vol. 1, Transcript of the *Boykin* Examination and Sentence, p 7.

[29]See State Rec. vol. 1, Waiver of Rights Form dated October 30, 2002.

[30]See State Rec. vol. 1, Transcript of the *Boykin* Examination and Sentence, pp. 9-13.

[31]See State Rec. vol. 1, Waiver of Constitutional Rights/Plea of Guilty Multiple Offender Form. The court notes that James' misrepresentation charge was subsequently released on February 5, 2003. See State Rec. vol. 1, Orleans Parish Criminal Sheriff's response to prisoner grievance.

agreement".[32] James also complains that the search of his person, which resulted in the stolen jewelry being confiscated, was a search incident to a pre-textual arrest for criminal trespass. James further asserts that he did not know about the dismissal of the trespass charges because his attorney failed to investigate his case properly.  He thus asserts that, had he known that the criminal trespassing charge had been refused, he would never had pled guilty. He additionally complains that his counsel failed to request discovery and failed to prepare for trial, thus leaving petitioner with entering a guilty plea as the only viable option. In sum, petitioner complains that his guilty plea should be found involuntary since his attorney was ineffective in his pre-trial representation.[33]

As previously mentioned, the State of Louisiana has filed a response to petitioner's habeas application in which it is conceded that the issues raised are exhausted. However, this court's independent review of the state record reveals otherwise. "Before seeking federal habeas relief, a state prisoner must exhaust available state remedies, 28 U.S.C.§ 2254(b)(1), giving the State the 'opportunity to ... correct' alleged violations of its prisoners' federal rights,' *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865, which means he must 'fairly present' his claim in each appropriate state court to alert that court to the claim's federal nature". *Baldwin v. Reese*, 541 U.S. 27, 29 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004). See also, 28 U.S.C. § 2254(b)(1); *Rose v. Lundy*, 455 U.S. 509,

---

[32]See Fed. Rec. Doc. 1, Memorandum in Support of Writ of Habeas Corpus at pp.2.

[33]See Fed. Rec. Doc. 1, Memorandum in Support of Writ of Habeas Corpus at pp. 3-7.

102 S. Ct. 1198 (1982); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S. Ct. 1827 (1973); *Serio v. Members of the Louisiana Board of Pardons*, 821 F. 2d 1112, 1117 (5th Cir. 1987).

Review of the state court record reveals that James has failed to present the same claims raised in his federal petition to the highest state court. In his writ application to the Louisiana Supreme Court, Writ No. 2003-KH-2651, which James captioned, "Extraordinary Writ - "Certiorari", James sought review of the Louisiana Court of Appeal, Fourth Circuit's ruling denying his writ of mandamus. He specifically argues that his guilty plea was unknowing and involuntary because he did not know he was waiving his right to appeal. Petitioner also argued that his attorney was ineffective in preparing his case and that he was illegally searched when he was charged with criminal trespassing. In the application filed with the Louisiana Court of Appeal, Fourth Circuit, petitioner had sought mandamus relief only. The application for mandamus did not specifically set forth the grounds by which James was attempting to challenge the validity of his guilty plea. Although the Fourth Circuit opined that petitioner's unqualified guilty plea had resulted in the waiver of all non-jurisdictional defects, the merits of petitioner's post-conviction claims were not before that court. Thus, it is possible that the issues raised before this court were not properly raised in the highest state court. However, even if the court assumes, *arguendo,* that the issues raised in James' state PCR application were properly before the highest state court, it is clear that James' challenge that his guilty plea was involuntary and unknowing because he was incorrectly informed that he had five years to bring an appeal was never presented to the

11

state's highest court.  In the original state PCR and in the filing before the Louisiana
Supreme Court, James raised two claims.  First, he argued that his guilty plea was
involuntary and unknowing due to trial counsel's lack of preparation. Second, he claimed that
his guilty plea was obtained through use of evidence obtained in an unconstitutional search,
seizure and arrest. Within the context of this second claim, James also claimed that he would
not have pled guilty had he known that the criminal trespassing charge had been dismissed.
A comparison of the state PCR and the federal habeas petition makes clear that James' claim
that he was misinformed about the time for taking an appeal as well as his related claim that
he was somehow denied his appellate and/or post-conviction rights is raised for the first time
before this court.

Despite this lack of exhaustion, the court does not find that the petition should
be dismissed with instructions for petitioner to return to the state courts.[34] It is unlikely that
a remedy is still available in the state courts for petitioner's claim that he was wrongly denied
his right to appeal. Petitioner is unlikely to succeed in obtaining an out of time appeal based
upon the misinformation he was given at the rendering of his guilty plea because under state
law, a motion for out of time appeal can only be obtained through the collateral review
process. See *State v. Counterman*, 475 So.2d 336, 338-39 (La.1985) (the appropriate

---

[34]28 U.S.C. §2254(b)(3)(c) provides that "[a]n applicant shall not be deemed to have
exhausted the remedies available in the courts of the State, within the meaning of this
section, if he has the right under the law of the State to raise, by any available procedure, the
question presented."

procedural vehicle for a defendant to seek the exercise of his right to appeal, after the time for filing an appeal has expired, is an application for post conviction relief); *State v. Cage*, 637 So.2d 89, 90 (La.1994) (transfer to district court of out-of-time rehearing application filed in Louisiana Supreme Court with instructions to consider rehearing application as an application for post-conviction relief). Since James had only two years to file for state post-conviction relief, he would be considered untimely in his request for an out-of-time appeal in the state courts.

Additionally, the court finds that it would be judicially inefficient to have James attempt to return to the state courts so as to fully exhaust his claims as a review of his claims on the merits leaves the court firmly convinced that James is not entitled to habeas relief. Under § 2254(b)(2), an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Before addressing the merits of James' claims, however, the court pauses to consider the State's response to this petition. In its response, the State argues that petitioner's claims are procedural barred because James waived his challenges when he entered his unqualified guilty plea. The State claims that this is an adequate and independent state ground for denying relief, citing the state case of *State v. Crosby*, 338 So.2d 584 (La. 1976). Although it is true that *Crosby* stands for this proposition, the principle that a guilty plea waives non-jurisdictional defects committed by the government prior to the entry of a

plea is recognized in both state and federal jurisprudence. See e.g., *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1609, 36 L.Ed.2d 235(1973)("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty pleas"); *U.S. v. Cotheran*, 302 F.3d 279, 285-86 (5th Cir. 2002)(guilty plea waives all non-jurisdictional defects, including governmental misconduct, improper motives for prosecution, and objections to unreasonable searches and seizures). However, all non-jurisdictional defects are waived if, and only if, petitioner's guilty plea passes constitutional muster by being voluntary and knowing. While the State's response, i.e., that petitioner's claims are waived because he pled guilty, is certainly not incorrect, it begs the real question before this court. That is, was Henry James' guilty plea voluntary and knowing despite 1) his attorney's alleged faulty representation, and, 2) his having been misinformed during the rendering of that plea that he had five years to take an appeal. If the court concludes that it was a valid plea, then the claims now raised by James are not subject to review as they were waived by entry of petitioner's voluntary guilty plea.

Based upon the record before this court, the court finds that James guilty plea was voluntary and knowing. To comport with the Fifth Amendment, a defendant's plea of guilty must be voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); see also *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d

203 (1985) ("[The] long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." ') (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).  A guilty plea may be constitutionally infirm if a defendant failed to understand the constitutional rights he was waiving by pleading guilty or had an incomplete understanding of the charges lodged against him. *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). The burden is on the petitioner to establish that the plea was neither intelligent nor voluntary. *United States v. Smith*, 844 F.2d 203 (5th Cir. 1988).  A person who complains of antecedent constitutional violations is limited in a federal *habeas corpus* proceeding to attacks on the voluntary and intelligent nature of the guilty plea through proof that the advice received from counsel was not "within the range of competence demanded of attorneys in criminal cases." *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)); *see* also *Hill*, 474 U.S. at 58 (the two-prong test enunciated in *Strickland* applies equally to uninformed guilty pleas that are alleged to be the result of ineffective counsel).  Moreover, "[t]he  representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)).

When challenging a guilty plea based on ineffective assistance of counsel, a petitioner must show: (1) that counsel's performance was deficient, and (2) a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59.  With regard to his counsel's representation, petitioner complains that his counsel should have investigated his case more thoroughly before he recommended that petitioner enter a plea.  James faults counsel for his failure to request discovery and failure to prepare for trial, however the record shows that James was acting as his own lawyer from the time of his arraignment on July 24, 2002 through motion hearings held on September 13, 2002 and possibly through the time when he entered his plea.[35] James made no requests for discovery while he was representing himself although he did represent himself at a motion to suppress hearing as well as for a preliminary hearing. The Fifth Circuit has held that in the case of a self-represented defendant, there is no constitutional right to stand-by counsel. *United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998).  "This court has held that a defendant's statutory right to choose *pro se* or attorney representation is 'disjunctive'; a defendant has a right to one or the other, but not a combination of the two." *Id.* (citation omitted) . In the absence of a constitutional right, "it is unlikely that standby counsel's failure to assist could be a violation of [defendant's] Sixth Amendment rights". *Id.*

---

[35]See State Rec. vol. 1, Docket entries from July 24, 2002 through October 30, 2002.  At the *Boykinization* hearing, a review of the transcript indicates that petitioner entered his guilty plea with the assistance of counsel.  However, there is no record evidence to indicate that counsel's role as "stand-by" counsel was ever altered.

16

Additionally, even if James was no longer representing himself at the time of his plea, he does not specify how he was prejudiced from his counsel's lack of discovery in this case. In fact, James' primary complaint seems to be that counsel was allegedly unaware that the criminal trespass charges against him had been withdrawn. James apparently believes that he would have had a better chance of arguing that his Fourth Amendment rights were violated as a result of the withdrawal of these charges. Yet there is no evidence to support James' theory. The record is undisputed that, at the time of his arrest, petitioner was found hiding under a private residence on Canal Boulevard in New Orleans. Under Louisiana law, a defendant can be convicted of criminal trespass upon a showing of unauthorized entry upon immovable property owned by another under circumstances where the person entering the property knows or reasonably should know that entry is unauthorized. See generally *State v. Simmons*, 817 So.2d 16 (La. 2002), and, La. R.S. 14:63. Based upon the elements of the charge, James' initial arrest on this charge was not unreasonable nor has James presented this court with any evidence to establish that the search incident to arrest was unreasonable. Petitioner fails to show the requisite *Strickland* prejudice from counsel's failure to request discovery or conduct additional investigation.

With regard to James' claim that his plea was rendered involuntary because he was misinformed about the time within which to bring an appeal, the court finds the claim also without merit. First, it is questionable whether the state district judge actually told James that he had five years within which to take an appeal. The judge, having supposedly

17

repeated this misinformation on three different occasions during the colloquy, was implausibly not corrected by either the prosecutor, defense counsel nor petitioner. The transcript of the *Boykinization* shows that the Judge was, in fact, reading from the Waiver of Rights Form, which the prosecutor, defense counsel and petitioner had already reviewed. The Waiver of Rights Form clearly stated that petitioner had five days to take an appeal and petitioner initialed the document and confirmed that he had reviewed the document with his attorney.[36] The court finds that it is just as likely that this "mis-statement" during the *Boykin* colloquy was really the result of transcription error. Critical to this assessment is the fact that James filed an "Extraordinary Writ" application to the Louisiana Supreme Court on September 13, 2003 in which he admitted, "Petitioner avers that Judge Arthur Hunter *did inform him* that after pleading guilty, he had a *5 day* limit to appeal this conviction, and a 2 year time period in which to seek post-conviction relief."[37] In that same writ application, petitioner reported to the Louisiana Supreme Court that, despite being ordered to provide petitioner with a copy of the colloquy of his guilty plea on three occasions, the trial court still had not provided the document to petitioner. Thus, prior to receiving a copy of the actual colloquy, petitioner's own words within his "Extraordinary Writ" make clear that he knew and conceded that he had been informed by the state district judge that he had five *days* to take an appeal.

---

[36]State Rec. vol. 1, Transcript of the *Boykin* Examination at p. 7.

[37]See "Extraordinary Writ - Certiorari", Writ No. 03-KH-2651, attached as an exhibit to petitioner's federal application.

18

James gave his guilty plea after being informed properly that he was waiving critical rights, such as the right to a trial by judge or jury, the right to be presumed innocent, the right to present and question witnesses, the right to remain silent at trial or to testify on his own behalf, and, the right to appeal any verdict of guilt.[38] James was also informed of the proper sentencing range for his crime. He indicated that he was entering a plea of guilty of his own free will because he was, in fact, guilty. Further, he initialed a Waiver of Rights Form that properly informed him of the rights which he was waiving with his guilty plea, including the right to take an appeal within five days. Reviewing the record as a whole, this court finds that James' guilty plea was made after the trial court adequately informed him of the consequences of his plea.

Finally, James cannot claim that, but for being allegedly misinformed about his appellate rights, he would not have pled guilty. Had he been convicted after a trial of possession of stolen property greater than $500.00, James would have been facing a term of imprisonment up to a maximum of ten years. Additionally, as a second offender, James was exposed to a sentence of at least five years and up to twenty years.[39] James benefitted from his plea, drawing a sentence of five years as a second offender.

As this court finds that James' guilty plea was constitutionally obtained, the

---

[38]Louisiana law does not require that the district judge inform a defendant that he is waiving his right to appeal by entering a plea of guilty. See La. R.S. art. 556.1; *State v. Senterfitt,* 771 So.2d 198 (La. App. 3rd Cir 2000); *State v. Jones*, 733 So.2d 127 (La. App. 2nd Cir. 1999).

[39]See La. R.S. 15.529.1(A)(1)(a).

state court's holding that James' unqualified guilty plea waived all non-jurisdictional defects is a reasonable one.  See 28 U.S.C. §2254 (d).[40] James is not entitled to federal habeas relief. Accordingly,

## RECOMMENDATION

IT IS HEREBY RECOMMENDED that the petition of Henry James for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

---

[40]Section 2254(d) provides in full:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

20

consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _5th_ day of _August_ , 2005.


LOUIS MOORE, JR.
United States Magistrate Judge

21